# Exhibit A

FILED: KINGS COUNTY CLERK 08/12/2013                    INDEX NO. 504627/2013

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 08/12/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------X

ENIGMA MANAGEMENT CORP., a/k/a                    Index No.:
ENIGMA LABORATORIES,

            Plaintiff,

    - against -                                    **VERIFIED COMPLAINT**

MULTIPLAN INC., and UNITED HEALTHCARE
INSURANCE COMPANY OF NEW YORK,

            Defendants.
-----------------------------------------------------------------------X

Plaintiff, Enigma Management Corp., a/k/a Enigma Laboratories, by its attorneys, The Law

Office of Roman Popik, P.C., alleges as and for its Verified Complaint against Defendants, Multiplan

Inc. and United Healthcare Insurance Company of New York, as follows:

## PARTIES

1.      At all relevant times, Plaintiff, Enigma Management Corp., a/k/a Enigma

Laboratories ("Enigma"), was and continues to be a New York corporation with its principal place of

business located at 3611 14th Avenue, Brooklyn, New York 11218.

2.      Upon information and belief, at all relevant times, Defendant, MultiPlan Inc.,

("Multiplan"), was and continues to be a New York corporation with its principal place of business

located at 115 Fifth Avenue, New York, New York 10011. Multiplan has been engaged in the

business of leasing various provider networks to insurers, third-party administrators, self-funded

plans, and health maintenance organizations.

3.      Upon information and belief, at all relevant times, Defendant, United Healthcare

Insurance Company of New York, Inc., ("United"), was and continues to be a New York corporation

with a place of business located at 1 Penn Plaza, New York, New York 10119. United is a domestic

insurer licensed in the State of New York to write accident and health insurance.

## GENERAL BACKGROUND

4.      Prior to the events in question, Enigma was an "out-of-network" provider of health care services and was not contracted with United's preferred provider organization ("PPO").

5.      Upon information and belief, a PPO is a managed care organization of medical doctors, hospitals, and other health care providers which have contracted with an insurer or a third-party administrator to provide health care at reduced rates to the insurer's or administrator's clients.

6.      Upon information and belief, at all relevant times, United offered health insurance to patients via various plans, including but not limited to a plan known as the "Empire Plan".

7.      Upon information and belief, under the Empire Plan's coinsurance policy, United pays eighty percent of health care costs, and the patient pays the remaining twenty percent.

8.      At all relevant times, United enticed Enigma to become an approved out-of-network provider for those patients insured under United's health insurance plans, such as the Empire Plan, on the condition Enigma agree to a fifty percent discount on health care services through a contract with Multiplan.

9.      Upon information and belief, at all relevant times, Multiplan had a "network" of health care providers that were made available to patients of Multiplan's clients at a discounted rate.

10.      On or about February 2, 2005, Multiplan, as "Network", and Enigma, as "Facility", entered into a written agreement ("Agreement") to establish a preferred provider relationship, stating:

> WHEREAS, Network has created and maintains a network of healthcare providers ("Network Providers"), by entering into agreements with acute care and ancillary health care providers ("Network Facilities"), and physicians and other health care professionals ("Network Practitioners"), that have agreed to provide health care services to individuals ("Participants") covered by health services benefits programs insured or administered by Network clients in exchange for reimbursement at agreed upon rates; and
> WHEREAS, Network has entered into agreements with various clients (Clients) including but not limited to self-insured employers, third party administrators, insurers, and union welfare funds that issue or administer health coverage pursuant to a group benefit plan, Workers' Compensation program, automobile liability insurance coverage, or other

2

arrangement (Benefit Programs) for covered individuals (Participants), Network has established networks of preferred health care providers who have agreed to render health care services to Participants.

11.    At all relevant times, Section A, Paragraph 3 of the Agreement defined "client" as:

An employer, insurance carrier, or other entity that sponsors or administers, as applicable, one or more Benefit Program[s] and which has contracted with Network on behalf of one or more such Benefit Program[s], to enable Participants to have access to the Network in a manner consistent with the terms and conditions of this Agreement.

12.    Upon information and belief, at all relevant times, United was a "client" of Multiplan.

13.    At all relevant times, Section A, Paragraph 1 of the Agreement defined "benefit program" as "[a] contract, policy, or other document, or a Workers' Compensation or auto medical plan under which a Client is obligated to provide benefits on behalf of participants."

14.    Upon information and belief, at all relevant times, United's health insurance plans, such as the Empire Plan, were "benefit programs" provided by United.

15.    At all relevant times, Section A, Paragraph 10 of the Agreement defined "participant" as "[a] person who is entitled to benefits and who on the date health care services are rendered has satisfied the eligibility requirements under the Client's Benefit Program."

16.    Upon information and belief, at all relevant times, United's patients, who were provided with services from Enigma, were "participants" of United's health insurance plans.

17.    At all relevant times, in order to receive benefits under United's health insurance plans, Enigma was required to provide a fifty percent discount on healthcare services performed for Multiplan's clients.

18.    At all relevant times, Section D, Paragraph 1 of the Agreement specified the following regarding Enigma's healthcare rates for Multiplan clients:

a.  Facility agrees to accept from Clients as payment-in-full for Covered Services rendered to Participants, the Contract Rate(s) according to Appendix A.

3

b. Facility guarantees that the Contract Rates hereunder are lower than the prompt pay rates Facility offers to the general public and/or that are required by law.

c. The Contract Rates shall apply only to Clients with which Network has a contractual relationship in effect on the date(s) of services. The Contract Rates shall not apply to any Client that contract directly with Facility.

19.     At all relevant times, Section D, Paragraph 7 of the Agreement provided that any

disputed claims between Enigma and Multiplan's clients would be dealt with as follows:

d. In the event of dispute between Provider and Client, Network shall make its best efforts to facilitate resolution of the dispute. Provider shall cooperate with Network's efforts by providing access to records and personnel reasonably necessary to support resolution of the dispute.

20.     At all relevant times, following execution of the Agreement, Enigma provided "out-

of-network" services to United's participants at the agreed upon discounted rate.

21.     At all relevant times, Enigma submitted health insurance claims to United for

payment within the time limits set out under the Agreement.

22.     At all relevant times, services provided by Enigma to United's participants were not

contingent on the participant's obligation to pay their deductible as a prerequisite.

23.     At all relevant times, payment to Enigma for services provided to United's

participants was not contingent upon United receiving proof of payment by a participant.

24.     At all relevant times, and specifically in a letter dated April 23, 2013, United claimed

that Enigma waived deductible and coinsurance amounts, stating "[w]aiver of deductible and

coinsurance amounts under the Empire Plan are not acceptable since we do not cover services or

supplies that the covered individual is not required to pay."

25.     At all relevant times, and specifically in a letter dated February 13, 2013, Enigma

argued that United's claims were false, demanded United provide proof of such wrongdoing, and

asserted Enigma would not accept United's unsubstantiated accusations.

4

26.     At all relevant times, United asserted they would not pay Enigma's claims unless Enigma sent copies of checks or credit card statements from United's participants to United evincing proof of payment for Enigma's services.

27.     At all relevant times, Enigma maintained that the participant information demanded by United to process Enigma's claims was private and proprietary, and that Enigma was unable to provide United with such information.

28.     At all relevant times, United ignored Enigma's letters and continued to refuse to provide either proof of Enigma's alleged wrongdoing or, payment for Enigma's submitted claims.

29.     At all relevant times, Enigma provided United with the invoices sent to participants with United insurance plans whose claims for payment were rejected.

30.     At all relevant times, United refused to accept Enigma's invoices sent to participants with United insurance plans as proof of payment by those participants.

31.     At all relevant times, Enigma was not obliged to ensure United's participants had paid the deductible under United's insurance plans, such as the Empire Plan, in order to receive its own payments from United.

32.     At all relevant times, it was the responsibility of each participant to pay their out-of-network health care costs under their appropriate deductible and coinsurance plans.

33.     At all relevant times, Enigma fulfilled its obligations to Multiplan and United.

34.     At all relevant times, Multiplan did not attempt to facilitate resolution of the dispute between Enigma and United as is required by Section D, Paragraph 7 of the Agreement.

35.     As a result of United's failure to pay Enigma, Enigma has sustained significant monetary damages.

36.     In June 2012, United failed to pay $3,081.21 owed to Enigma under the Agreement.

37.     In July 2012, United failed to pay $68.44 owed to Enigma under the Agreement.

38.     In August 2012, United failed to pay $6,462.52 owed to Enigma under the Agreement.

39.     In September 2012, United failed to pay $51,748.83 owed to Enigma under the Agreement.

40.     In October 2012, United failed to pay $97,328.68 owed to Enigma under the Agreement.

41.     In November 2012, United failed to pay $80,134.59 owed to Enigma under the Agreement.

42.     In December 2012, United failed to pay $42,885.09 owed to Enigma under the Agreement.

43.     At all relevant times, in total, United failed to pay $281,709.36 owed to Enigma under the Agreement in 2012.

44.     In January 2013, United failed to pay $211,108.73 owed to Enigma under the Agreement.

45.     In February 2013, United failed to pay $212,176.70 owed to Enigma under the Agreement.

46.     In March 2013, United failed to pay $222,175.66 owed to Enigma under the Agreement.

47.     In April and May of 2013, United failed to pay $297,993.12 owed to Enigma under the Agreement.

48.     At all relevant times, in total, United failed to pay $943,454.21 owed to Enigma under the Agreement in 2013.

49.     Up to date, United failed to pay $1,225,163.57 owed to Enigma under the Agreement.

6

## AS AND FOR A FIRST CAUSE OF ACTION FOR
## BREACH OF CONTRACT AGAINST MULTIPLAN

50.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 49 with the same force and effect as if set forth at length herein.

51.     At all relevant times, under the Agreement, disputes arising regarding payment issues between Enigma and Multiplan clients, including United, were to be resolved within sixty days.

52.     At all relevant times, Multiplan has not resolved the ongoing refusal of United to pay Enigma for its previously provided healthcare services.

53.     Upon information and belief, at all relevant times, Multiplan has failed to ensure United pay Enigma the contract rates for health care services under the Agreement.

54.     At all relevant times, Enigma fully performed its obligations under the Agreement.

55.     At all relevant times, Multiplan breached its Agreement with Enigma.

56.     By reason of the foregoing, Enigma is entitled to money judgment in the amount of $1,225,163.57, plus interest from June 2012.

## AS AND FOR A SECOND CAUSE OF ACTION FOR
## UNJUST ENRICHMENT AGAINST UNITED

57.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 56 with the same force and effect as if set forth at length herein.

58.     United has been enriched by withholding funds due Enigma for Enigma's performance of health care services for United's insured participants.

59.     In total, United failed to pay Enigma $1,225,163.57 to compensate Enigma for the services provided to United's participants from June 2012 through and including May 2013.

60.     Equity and good conscience demand that United compensate Enigma in the amount of $1,225,163.57.

61.     By reason of the foregoing, Enigma is entitled to money judgment in the amount of $1,225,163.57, plus interest from June 2012.

7

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## FRAUDULENT MISREPRESENTATION AGAINST UNITED

62.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 61 with the same force and effect as if set forth at length herein.

63.     At all relevant times, United enticed Enigma to enter into the Agreement with Multiplan by promising United would pay Enigma.

64.     Prior to Agreement and services provided by Enigma, United did not represent to Enigma that the actual receipt of proof of payment by United participants was a condition of payment to Enigma.

65.     At all relevant times, United intentionally withheld from Enigma its scheme to demand actual proof of payment by United's insurance participants as a precondition to making payments to Enigma.

66.     At all relevant times, if Enigma had been informed of United's demand for receipt of actual proof of payment by United's participants, Enigma would not have entered into the Agreement.

67.     United made the misrepresentation willfully and with the intent to deceive Enigma.

68.     At all relevant times, Enigma relied upon United's representation in entering into the Agreement with Multiplan and offering United discounted healthcare services.

69.     At all relevant times, Enigma had no knowledge of the falsity of the representation at the time of representation and/or execution of the Agreement.

70.     By reason of the foregoing, Enigma is entitled to money judgment in the amount of $1,225,163.57, plus interest from June 2012.

**WHEREFORE**, it is respectfully requested that judgment be entered as follows:

1.      **ON THE FIRST CAUSE OF ACTION**, in favor of Enigma against Multiplan, the sum of **ONE MILLION TWO HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED SIXTY THREE DOLLARS AND FIFTY SEVEN CENTS ($1,225,163.57)**, plus interest from June 2012, plus attorney's fees and costs;

2.      **ON THE SECOND CAUSE OF ACTION**, in favor of Enigma against United, the sum of **ONE MILLION TWO HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED SIXTY THREE DOLLARS AND FIFTY SEVEN CENTS ($1,225,163.57)**, plus interest from June 2012, plus attorney's fees and costs;

3.      **ON THE THIRD CAUSE OF ACTION**, in favor of Enigma and against United, the sum of **ONE MILLION TWO HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED SIXTY THREE DOLLARS AND FIFTY SEVEN CENTS ($1,225,163.57)**, plus interest from June 2012, plus attorney's fees and costs; and

4.      Granting Plaintiff other relief that this Court may deem just and proper.


Dated:  New York, New York
        August 7, 2013

                                Law Office of Roman Popik, P.C.
                                Attorneys for Plaintiff
                                17 State Street, Suite 1575
                                New York, New York 10004
                                (646) 562-2207

                                BY:
                                Roman Popik, Esq.

9

## VERIFICATION

STATE OF NEW YORK          )
                           )ss:
COUNTY OF KINGS            )

    Bella Abrazi, being duly sworn, deposes and says:

    I am the president of Enigma Management Corp., Plaintiff herein. I have read the foregoing Verified Complaint, know its contents and I am acquainted with the facts upon which it is based. The Verified Complaint is true to my knowledge and belief, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_Bella Abrazi_
Bella Abrazi

Sworn to before me this
7 day of August, 2013

_Valentina Kycherenko_
Notary public

VALENTINA KYCHERENKO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KY6202330
Qualified in Kings County
My Commission Expires 03/16/2017