UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
:
ENIGMA MANAGEMENT CORP., a/k/a :
ENIGMA LABORATORIES, :          13-CV-5524 (ARR) (JO)
:
       Plaintiff, :
:          <u>MEMORANDUM AND</u>
  -against- :          <u>ORDER</u>
:
MULTIPLAN, INC., and UNITED HEALTHCARE :
INSURANCE COMPANY OF NEW YORK, :
:
       Defendants. :
:
-------------------------------------------------------------------- X

ROSS, United States District Judge:

      Plaintiff, Enigma Management Corp., a/k/a Enigma Laboratories ("Enigma"), originally

brought this action in the Supreme Court of the State of New York, Kings County, against

defendants Multiplan, Inc. ("Multiplan") and United Healthcare Insurance Company of New

York ("United"). Enigma alleges that United failed to provide full payment on claims for health

care services that Enigma provided to participants in United's health insurance plans. Enigma

brings a cause of action for breach of contract against Multiplan and causes of action for unjust

enrichment and fraudulent misrepresentation against United.

      United removed the action to this court, asserting that Enigma's claims are preempted by

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et. seq.

Now before the court is Enigma's motion to remand the action to state court. For the reasons set

forth below, I find that Enigma's causes of action against United are preempted by ERISA,

thereby giving this court federal subject matter jurisdiction over the action. Accordingly, the

motion to remand is denied.

1

## BACKGROUND

Enigma is a health care provider that performs laboratory services. On or about February 2, 2005, Enigma entered into an agreement with Multiplan, a preferred provider organization, to become a member of Multiplan's preferred provider network. Compl., Dkt. #1, Ex. A, ¶ 10. Multiplan establishes networks of doctors, hospitals, and other providers who agree to perform health care services at discounted rates. Id. In turn, Multiplan enters into separate agreements with clients such as insurers, self-insured employers, and other entities that administer benefit programs. Id. Through these agreements, participants in their clients' benefit programs receive access to health care services from providers in Multiplan's network at the agreed-upon discounted rates. Id. ¶¶ 10-11. United, a health insurance company, is one of Multiplan's clients. Id. ¶ 12. By entering into the agreement with Multiplan, Enigma became an "approved out-of-network provider" for participants in United health insurance plans and agreed to perform health care services for those participants at the discounted rates set out in its agreement with Multiplan. Id. ¶¶ 8, 17-18. United's benefit plans require participants to contribute certain payments, referred to as deductible and coinsurance payments, when they receive health care services. Id. ¶ 32.

At issue in this litigation are claims for health care services provided by Enigma to participants in United's benefit plans between June 2012 and May 2013. Enigma states that it provided services at the agreed-upon discounted rates and submitted claims to United within the specified time limits. Id. ¶¶ 20-21. United denied full payment on the claims on the grounds that Enigma had failed to collect participants' required deductible and coinsurance payments. Id. ¶ 24. Enigma asserts that United withheld a total of $1,225,163.57 that Enigma is owed based on the rates set out in the preferred provider agreement between Enigma and Multiplan. Id. ¶ 49.

The complaint appears to raise two distinct arguments for why Enigma was entitled to full payment on the claims. First, Enigma asserts that it was not required to collect participants' deductible and coinsurance payments as a condition of receiving payment from United. Enigma maintains that it was each participant's responsibility to make his or her own deductible and coinsurance payments. Id. ¶ 32. Enigma states that "services provided by Enigma to United's participants were not contingent on the participant's obligation to pay their deductible as a prerequisite," and "payment to Enigma for services provided to United's participants was not contingent upon United receiving proof of payment by a participant." Id. ¶¶ 22-23. Therefore, Enigma argues, even if Enigma had failed to collect participants' deductible and coinsurance payments, this would not constitute grounds for United to deny full payment on the claims

Second, Enigma asserts that, in any event, it did collect participants' deductible and coinsurance payments but had a dispute with United over how to submit proof of those payments. United required Enigma to submit checks or credit card statements for the participants' payments, but Enigma maintained that this information was "private and proprietary." Id. ¶¶ 26-27. Instead, Enigma offered to submit invoices that Enigma had sent to participants, but United refused to accept the invoices as proof of payment. Id. ¶¶ 29-30. Enigma denies improperly waiving participants' payments and states that United has accused it of "wrongdoing" without providing any proof. Id. ¶¶ 25, 28.

Enigma asserts three causes of action. First, Enigma asserts a claim for breach of contract against Multiplan. Enigma cites a provision of its agreement with Multiplan stating that if a dispute arises between Enigma and one of Multiplan's clients, Multiplan will "make its best efforts to facilitate resolution of the dispute." Id. ¶ 19. Enigma asserts that Multiplan failed to meet this contractual obligation because it has not resolved the dispute between Enigma and

United regarding the claims for Enigma's services. Id. ¶¶ 51-55. Enigma seeks monetary damages in the amount of $1,225,163.57 plus interest. Id. ¶ 56.

Second, Enigma brings a claim for unjust enrichment against United. Enigma asserts that United "has been enriched by withholding funds due to Enigma for Enigma's performance of health care services for United's insured participants." Id. ¶ 58. Enigma seeks monetary damages in the amount of $1,225,163.57 plus interest. Id. ¶ 61.

Third, Enigma asserts a claim for fraudulent misrepresentation against United. Enigma asserts that United "enticed" Enigma to enter into the preferred provider agreement with Multiplan by promising to pay Enigma for its services. Id. ¶ 63. Enigma asserts that United "intentionally withheld from Enigma its scheme" to require proof that participants had made the deductible and coinsurance payments as a condition for paying Enigma's claims. Id. ¶¶ 64-65. Enigma asserts that United "made the misrepresentation willfully and with the intent to deceive Enigma." Id. ¶ 67. Enigma further states that it relied upon this representation and would not have entered into the agreement with Multiplan if it had known of the requirement to show proof of participants' payments. Id. ¶¶ 66, 68. Enigma seeks monetary damages in the amount of $1,225,163.57 plus interest. Id. ¶ 70.

Enigma filed this action in state court on or about August 12, 2013. On October 4, 2013, United removed the action to this court, arguing that the benefits at issue in the litigation arise under employee welfare benefit plans governed by ERISA and that all, or at least some, of Enigma's claims are preempted by ERISA. Notice of Removal, Dkt. #1. Multiplan consented to removal. Id. ¶ 7 & Ex. B. On October 11, 2013, Enigma moved to remand the action to state court on the ground that removal was untimely. Pl.'s Mot. to Remand, Dkt. #3. In subsequent briefing on the motion to remand, Enigma also argued that its claims are not preempted by

ERISA. Pl.'s Reply in Further Supp. of Mot. to Remand, Dkt. #14, at 6. On November 19, 2013,

I issued an order finding that removal was timely and requiring further briefing on whether this

court has subject matter jurisdiction over the action. Dkt. #20. Enigma and United have both

filed submissions. Dkt. #30, 33, 40, 41.[1]

## DISCUSSION

### I.      Legal Standard

A defendant can remove a civil action from state to federal court if "the district courts of

the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a). A federal court

has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United

States." 28 U.S.C. § 1331. As a general rule, "a cause of action arises under federal law only

when the plaintiff's well-pleaded complaint raises issues of federal law," and not if the federal

issue is raised as a defense. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). There is an

exception to this rule, however, if "a federal statute wholly displaces the state-law cause of

action through complete pre-emption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003);

see also Taylor, 481 U.S. at 63-64 ("One corollary of the well-pleaded complaint rule developed

in the case law, however, is that Congress may so completely pre-empt a particular area that any

civil complaint raising this select group of claims is necessarily federal in character.")

---

[1] As part of the additional briefing on subject matter jurisdiction, the court also ordered the parties to submit the full agreements between Enigma and Multiplan and between United and Multiplan. Dkt. #20. Multiplan filed an unopposed motion to file these documents under seal. Dkt. #28. The court granted the motion, ordering that the agreements be filed under seal, that the parties redact any quoted language from the agreements in their publicly filed briefings, and that unredacted copies of the briefings be submitted to chambers in sealed envelopes. Dkt. #34. The court has reviewed the full agreements filed under seal. The court finds that the relevant portions of the agreement between Enigma and Multiplan are already included in the public record, either in the complaint, Dkt. #1, or as an exhibit to Enigma's memorandum on the motion to remand, Dkt. #30, Ex. A. The parties have not made reference to any portion of the agreement between United and Multiplan in their briefings on the motion to remand. Having reviewed the agreement, the court is satisfied that nothing in that agreement changes the analysis in this opinion. Therefore, the court has not relied upon the sealed materials in deciding the motion to remand.

The Supreme Court has established that ERISA is one of those federal statutes that completely pre-empts state law causes of action. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). Under ERISA's civil enforcement scheme, set forth in ERISA § 502(a), a participant or beneficiary of a plan governed by ERISA can bring civil actions "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Congress intended that this provision would create a comprehensive, exclusive remedial scheme, and "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . is therefore pre-empted." Davila, 542 U.S. at 209. Furthermore, ERISA carries such "extraordinary pre-emptive power" that any state court actions that fall within the scope of ERISA's civil enforcement scheme are removable to federal court, even if the complaint only pleads state common law claims on its face. Taylor, 481 U.S. at 65-66; see also Grimo v. Blue Cross/Blue Shield of Vt., 34 F.3d 148, 151 (2d Cir. 1994).

The Supreme Court has set out a two-pronged test to determine when a state law claim is preempted by ERISA's civil enforcement scheme and is therefore removable to federal court. A cause of action is pre-empted if (1) the plaintiff could have brought the claim under ERISA's civil enforcement scheme, and (2) "there is no other independent legal duty that is implicated by a defendant's actions." Davila, 542 U.S. at 210. Under the Second Circuit's application of the Davila test, the first prong includes two separate inquiries: (1) "whether the plaintiff is the type of party that can bring a claim" under ERISA's civil enforcement scheme, and (2) "whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits" under ERISA. Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir. 2011).

6

The defendant bears the burden of establishing that the case is preempted by ERISA and properly removed to federal court. Grimo, 34 F.3d at 151. To determine whether removal is valid, this court can "look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation)." Montefiore, 642 F.3d at 331. The court only needs to identify a single claim that is preempted by ERISA in order to exercise subject matter jurisdiction over the case. Id. at 331 n.11; see also North Shore-Long Island Jewish Health Care Sys., Inc. v. Multiplan, Inc., No. 12-cv-1633 (JFB)(AKT), 2013 WL 3488560, at *13 (E.D.N.Y. July 12, 2013) [hereinafter North Shore v. Multiplan]; Beth Israel Med. Ctr. v. Goodman, No. 12 Civ. 1689(AJN), 2013 WL 1248622, at *2 (S.D.N.Y. Mar. 26, 2013).


**II.    Application**

At the outset, I note that Enigma has not identified the specific benefits claims at issue in the litigation, either in its complaint or in its submissions regarding the motion to remand. United asserts that Enigma provided health care services to participants in certain employee welfare benefit plans administered by United and governed by ERISA. Notice of Removal, Dkt. #1, ¶ 3. United has provided the court with an example of a claim that Enigma submitted in September 2012 and that United did not fully pay because Enigma allegedly waived the participant's deductible and coinsurance payments. Def. United's Sur-Reply in Opp'n to Mot. to Remand, Dkt. #16, at 4. This claim falls within the time period at issue in the complaint and raises the same reason for denial of full payment that Enigma challenges in the complaint. Enigma has not raised any objection to considering this claim as representative of the claims at issue in the litigation. Therefore, I will consider this sample claim when determining whether the court has subject matter jurisdiction over the action. See North Shore v. Multiplan, 2013 WL 3488560, at

7

*11 (analyzing sample of claims submitted by defendant where plaintiff has chosen in pleadings, arguments, and opposition papers not to identify the claims at issue).

I will first apply the Davila test to Enigma's cause of action against United for unjust enrichment, and then I will address Enigma's other two causes of action.

**A. Davila Prong One, Step One**

Under the Second Circuit's test in Montefiore, the court must break the first prong of the Davila test into two steps and must first consider whether Enigma is the type of party that could bring a claim under ERISA's civil enforcement scheme. Montefiore, 642 F.3d at 328-29. The text of the statute provides that a civil action can be brought by "a participant or beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1). Enigma, as a health care provider, does not fit either of these descriptions. However, the Second Circuit has established a "narrow exception" in which health care providers have standing to assert a claim under ERISA if a participant or beneficiary has assigned his or her claim to the provider "in exchange for health care." Montefiore, 642 F.3d at 329 (quoting Simon v. Gen. Elec. Co., 263 F.3d 176, 178 (2d Cir. 2001)).

Here, the undisputed record shows that participants in United plans assigned their claims to Enigma and that Enigma billed United directly for the claims. United has provided a spreadsheet of claims submitted by Enigma to United in October 2012, showing that Enigma had an assignment of benefits from the participant for each claim. Decl. of Jane E. Stalinski, Dkt. #32, Ex. A.[2] Enigma does not dispute that participants assigned their claims to Enigma. Pl.'s Mem. of Law in Further Supp. of Mot. to Remand, Dkt. #30, at 5. Therefore, it is clear that this first step of the Davila test is satisfied. Enigma is the type of party that can bring a claim under ERISA because it "stand[s] in the shoes of the [plan's] participants and beneficiaries in seeking

---

[2] In the field "PAYE_ASGN_CD," each claim has a code of "2." United provided a declaration from United's vice president of operations stating that a code of "2" in this field means that the provider has an assignment of benefits and that payment should be made directly to the provider. Decl. of Loretta Dawn Eisele, Dkt. #31, ¶ 3.

to receive payment for medical services rendered." North Shore-Long Island Jewish Health Sys., Inc v. Local 272 Welfare Fund, No. 12 CV 1056(CM), 2013 WL 174212, at *5 (S.D.N.Y. Jan. 15, 2013) [hereinafter North Shore v. Local 272]; see also North Shore v. Multiplan, 2013 WL 3488560, at *13 (evidence shows that plaintiff is the type of party that can bring a claim under ERISA where billing statements have a code for assignment, plaintiff does not deny that benefits were assigned, and plaintiff brings claim on behalf of plan participants); Beth Israel, 2013 WL 1248622, at *3 (finding this step satisfied where insurers presented evidence that assignments were made and provider did not dispute the evidence).

### B. Davila Prong One, Step Two

The court must next consider whether the claim that Enigma asserts is the type of claim that can be brought under ERISA's civil enforcement scheme. Montefiore, 642 F.3d at 330. When analyzing this step, the Second Circuit distinguishes between claims involving the "right to payment" and claims involving the "amount of payment." Claims involving the right to payment "implicate coverage and benefits established by the terms of the ERISA benefit plan" and can be brought under ERISA's civil enforcement scheme. Id. at 331. By contrast, claims involving the amount of payment, such as "the computation of contract payments or the correct execution of such payments," implicate duties separate from the ERISA plan and are not the type that can be brought under ERISA. Id. While "[t]he need to reference plan language does not turn an amount of payment claim into a right to payment claim," courts have held that claims are the type that can be brought under ERISA if "the meaning of the plan language is disputed and requires the Court's interpretation." Neuroaxis Neurosurgical Assocs., P.C. v. Cigna Healthcare of N.Y., Inc., No. 11 Civ. 8517 BSJ AJP, 2012 WL 4840807, at *4 (S.D.N.Y. Oct. 4, 2012).

Engima's pleadings and submissions raise two separate arguments for why Enigma was

9

entitled to full payment of its claims. First, the complaint asserts that Enigma was not responsible for collecting participants' deductible and coinsurance payments as a condition for receiving full payment from United. Second, the complaint asserts that Enigma did in fact collect the payments from participants, but United refused to accept the invoices that Enigma submitted as proof of payment and instead demanded additional documentation that Enigma was not willing to provide. These are two distinct ways of framing the dispute, and at times Enigma appears to conflate these two positions in a way that obscures the analysis. Ultimately, though, I find that resolving either of these disputed issues will require the court to interpret the terms and requirements of the ERISA-governed benefit plan. Therefore, this case implicates Enigma's right to payment and falls within the scope of ERISA's civil enforcement scheme.

First, an analysis of the sample claim makes clear that if in fact Enigma had an obligation to collect payments from participants, this obligation arises from the ERISA plan. United has provided the court with a "Provider Explanation of Benefits" form for the sample claim, which shows that United relied on the terms of the plan to deny full payment on Enigma's claim. United stated on the form that it was reducing the payment because "[t]he plan does not provide reimbursement for amounts billed by the provider that the patient is not required to pay." Decl. of Carolyn Larson, Dkt. #17, Ex. B.[3] United has also provided the court with the "Summary Plan Description" for the ERISA plan that governs the sample claim. Decl. of Mabel Sue Fairley, Dkt. #18, Ex. C. The plan sets out the coinsurance and deductible payments that participants are expected to make when they receive medical care from non-network providers such as Enigma.[4]

---

[3] The full text of the relevant provision on the form reads: "Your plan reimburses up to the eligible expense amount for out-of-network services. The plan does not provide reimbursement for amounts billed by the provider that the patient is not required to pay. We understand that this provider or physician waives coinsurance and/or deductible amounts, and may accept the benefit payment(s) paid to you as payment-in-full. We have reduced the applicable deductible and/or coinsurance amount(s) from the covered total to represent the actual charge for the service. If you made additional payments to this provider or physician, please submit proof of payment(s) for review."

[4] The plan defines a copayment as "the amount you pay each time you receive certain Covered Health Services." Id.

The plan states that participants are responsible for making these payments directly to the non-network provider. Id. at 4. The plan further states: "In the event that a Non-Network provider waives Copayments and/or the Annual Deductible for a particular health service, no Benefits are provided for the health service for which the Copayments and/or Annual Deductible are waived." Id. at 47.[5] As this sample claim demonstrates, the ERISA plan governs what payments the participant is expected to make for non-network services, the fact that the participant must make these payments directly to the provider, and the implications if the provider does not collect those payments. The court will need to interpret the terms of the plan to determine whether United properly relied on these provisions when it reduced its payments to Enigma.

Second, even if Enigma frames its case as a disagreement about the required proof of payment, the ERISA plan will still govern the dispute. The plan sets out the procedures that participants must follow to file claims for benefits when they receive services from a non-network provider. Id. at 60. These provisions also apply when, as here, the non-network provider submits a claim on the participant's behalf and receives the payment directly. Id. The plan establishes an appeals process if United denies the claim in whole or in part. Id. at 63. In a section entitled "General Legal Provisions," the plan states:

> At times we or the Claims Administrator may need additional information from you. You agree to furnish us and/or the Claims Administrator with all information and proofs that we may reasonably require regarding any matters pertaining to the Plan. If you do not provide this information when we request it we may delay or deny payment of your Benefits. By accepting Benefits under this Plan, you authorize and direct any person or institution that has provided services to you to

---

at 3. The required copayment for laboratory services from a non-network provider such as Enigma is 30 percent of eligible expenses. Id. at 27. Participants are also required to pay an annual deductible, defined as "[t]he amount you pay for Covered Health Services before you are eligible to receive Benefits." Id. at 6. For non-network services, the deductible is $800 per covered person per calendar year. Id.

[5] This broad language in the plan seems to conflict with the language on the "Provider Explanation of Benefits" form. The form states that payments will be reduced if the provider waives participants' coinsurance and deductible payments. The language in the plan, by contrast, states that "no Benefits are provided" in that situation (emphasis added). It is unnecessary at this stage to resolve this issue, but I note that this variation in the language only serves to demonstrate that the court will need to interpret the terms of the ERISA plan in order to resolve the dispute.

> furnish us or the Claims Administrator with all information or copies of records relating to the services provided to you. We or the Claims Administrator have the right to request this information at any reasonable time.

Id. at 87. As these provisions show, the ERISA plan governs what information providers must send to United when filing claims for benefits. Under the terms of the plan, participants must direct providers to submit "all information" relating to their services. The plan allows United to request additional information and to delay or deny payment if that information is not provided. In this case, Enigma submitted invoices as proof that participants had made the deductible and coinsurance payments, but United instead required credit card or bank statements. The court will need to interpret these provisions of the ERISA plan to determine whether United could "reasonably require" Enigma to submit specific forms of documentation as proof of payment.

Enigma argues that this case only implicates the "amount of payment," so under Montefiore this is not the type of claim that falls within the scope of ERISA. According to Enigma, United did not deny payment on the disputed claims altogether, but instead paid the claims in part, thereby acknowledging that the medical services were covered under the participants' benefit plans and that Enigma had a right to payment. Therefore, Enigma argues, the case does not involve a coverage or benefits determination, but merely involves a dispute over the amount that United was required to pay for covered services. Pl.'s Mem. of Law in Further Supp. of Mot. to Remand, Dkt. #30, at 6. Enigma cites language from Montefiore in which the Second Circuit explained that claims do not fall within the scope of ERISA's civil enforcement scheme if they involve "underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan." Montefiore, 642 F.3d at 331.

Yet Enigma's argument mischaracterizes the dispute. In a literal sense the parties

12

disagree on the <u>amount</u> that United is required to pay on Enigma's claims, but they only disagree because United asserts that Enigma does not have the <u>right</u> to full payment under the terms of the ERISA plan. The court will need to interpret the plan to determine what payments the participants were required to make, whether United could properly reduce Enigma's payments if it did not collect those payments, and whether United could require specific documentation as proof that Enigma had collected those payments. <u>See</u> <u>North Shore v. Local 272</u>, 2013 WL 174212, at *5 ("[T]he only reason there is a dispute over amounts allegedly due to Plaintiffs is that the [insurer], by applying its rules for payment eligibility, concluded . . . that it had no obligation under the Plan to pay the monies Plaintiffs here seek. The claims thus implicate coverage determinations under the relevant terms of the plan.").

Prior cases in this Circuit make clear that claims do not have to involve medical coverage determinations in order to fall within the scope of ERISA's civil enforcement scheme. Instead, claims implicate the provider's "right to payment" where, as here, insurers denied full payment because of the provider's alleged failure to comply with procedures required by the plan. <u>See</u> <u>Montefiore</u>, 642 F.3d at 331 (claims where insurer denied payment because of provider's failure to obtain pre-certification "appear to implicate coverage determinations under the relevant terms of the Plan"); <u>Beth Israel</u>, 2013 WL 1248622, at *3 (finding ERISA preemption where claims were denied based on provider's alleged failure to obtain pre-certification and to submit timely claim processing information); <u>North Shore v. Local 272</u>, 2013 WL 174212, at *3 (finding ERISA preemption where claims were denied based on provider's failure "to respond to requests for information needed to process the claims under the terms of the [summary plan description]"); <u>cf.</u> <u>Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.</u>, No. 10 Civ. 7427(JSR), 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011) (noting that parties do not dispute

13

that claims relating to provider's waiver of patient's deductible and coinsurance payments are

preempted by ERISA and must be brought under ERISA's civil enforcement scheme).

Moreover, prior cases also show that the "amount of payment" category is intended to

have a narrow definition that would not encompass the claims at issue here. In <u>Montefiore</u>, the

Second Circuit provided examples of claims that might implicate the "amount of payment,"

including disputes over the "contractually correct payment amount," the "proper execution of the

monetary transfer," "the timeliness of payment," or "the proper form of payment." 642 F.3d at

325 & n.3. None of these examples are similar to the dispute in this case, since the parties do not

disagree about the applicable rate for Enigma's services, the timing of United's payment to

Enigma, or the mechanism for paying the claim. Where a case goes beyond a "simple rate

calculation analysis" and requires interpretation of the terms of the ERISA plan, it cannot be

considered an "amount of payment" case. <u>North Shore v. Multiplan</u>, 2013 WL 3488560, at *15.

Therefore, I find that Enigma's cause of action for unjust enrichment implicates the "right

to payment." Since this is the type of claim that can be brought under ERISA, the claim satisfies

both parts of the first prong of the <u>Davila</u> test.

### C. <u>Davila</u> Prong Two

Even if the first prong of the <u>Davila</u> test is satisfied, a claim is not preempted by ERISA

if "some other, completely independent duty forms <u>another</u> basis for legal action." <u>Montefiore</u>,

642 F.3d at 332. Therefore, the court must consider whether Enigma's state law claim of unjust

enrichment implicates an independent legal duty. A state law claim does not raise an independent

legal duty if liability "derives entirely from the particular rights and obligations established by

the benefit plans." <u>Davila</u>, 542 U.S. at 213.

The basis for the claim is that United has been unjustly enriched by withholding funds

that are due to Enigma for its health care services. United contends that it was entitled to withhold the challenged funds under provisions of the ERISA plan. In essence, then, this is a claim for unpaid benefits that falls squarely within the terms of the ERISA plan and does not raise any independent legal obligation. See Montefiore, 642 F.3d at 332 (provider's practice of calling insurer to verify eligibility and coverage before providing a service did not create an independent legal duty for the insurer to pay the claim because pre-approval was "expressly required by the terms of the Plan itself and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits"); North Shore v. Multiplan, 2013 WL 3488560, at *20 (unjust enrichment claim does not raise independent legal duty where plaintiff seeks payment for medical services rendered to participants and "any payments here for medical services are derived from rights created under the Plan"); S.M. v. Oxford Health Plans (N.Y.), Inc., No. 12 Civ. 4679(PGG), 2013 WL 1189467, at *5 (S.D.N.Y. Mar. 22, 2013) (no independent legal duty where plaintiff challenges "medical necessity determination that was required under the terms of an ERISA-regulated plan"); North Shore v. Local 272, 2013 WL 174212 at *6 (no independent legal duty where plaintiff seeks reimbursement for services and the only issue is whether there was a duty under the plan to pay for those services).

Nothing in Enigma's contract with Multiplan creates an independent legal duty that would require United to pay the full claims at issue here. The contract establishes that Enigma will provide services at agreed-upon rates to participants in benefit plans administered by Multiplan's clients. The clients must pay Enigma within thirty business days of receipt of a "Clean Claim" in order to receive the benefit of the discounted rates. Pl.'s Mem. of Law in Further Supp. of Mot. to Remand, Dkt. #30, Ex. A, at 4. However, the agreement expressly allows clients to reduce payments "by any applicable deductibles, co-payments, co-insurance."

Id. The definitions of these terms in the agreement all refer to the terms of the ERISA plans.[6]

Therefore, I agree with United that this agreement between Enigma and Multiplan cannot resolve

the dispute at hand. Def. United's Supplemental Mem. of Law, Dkt. #33, at 8. The court will

need to look to the ERISA plan to determine what the "applicable" deductible and coinsurance

payments are and whether a provider's failure to collect those payments affects United's

obligation to pay the benefits. See Arditi v. Lighthouse Int'l, 676 F.3d 294, 300 (2d Cir. 2012)

(finding employment agreement did not create independent legal duty to provide pension

benefits where the agreement referenced the pension plan and "made clear that [plaintiff's]

benefits arose from, and were governed by, the terms of the Plan"); Beth Israel, 2013 WL

1248622, at *4-5 (rejecting provider's argument that provision in contract requiring all "clean

claims" to be paid within 45 days created an independent legal duty "because the term 'clean

claim' incorporates plan coverage and eligibility limitations").

I find that Enigma's unjust enrichment claim against United satisfies both prongs of the

Davila test and is preempted by ERISA, thereby providing a basis for federal subject matter

jurisdiction. While the foregoing analysis is sufficient to decide the motion to remand, I will also

address Enigma's other causes of action in order to provide guidance to the parties.

**D. Enigma's Fraudulent Misrepresentation Claim Against United**

In Enigma's cause of action against United for fraudulent misrepresentation, Enigma

asserts that United enticed Enigma to enter into the agreement with Multiplan and never

disclosed that Enigma would have to provide proof of participants' deductible and coinsurance

---

[6] The agreement defines a Benefit Program as "[a] contract, policy, or other document . . . under which a Client is obligated to provide benefits on behalf of Participants." Co-Insurance is defined as "[a]n amount equal to a fixed percentage that the Participant is responsible for paying in accordance with the Benefit Program." Co-Payment is defined as "[a]n expressed dollar amount for a given Covered Service which, under the terms of the Benefit Program, is required to be paid by the Participant." Deductible is defined as "[t]he amount a Participant is required to pay by the Benefit Program before a claim for benefits by the Participant is eligible for reimbursement by the Client." Id. at 1-2.

payments. Enigma argues that this claim falls outside the scope of ERISA and raises an independent claim that United fraudulently misrepresented the amount it would pay for Enigma's services. Pl.'s Mem. of Law in Further Supp. of Mot. to Remand, Dkt. #30, at 7. Here, too, Enigma appears to conflate two different arguments about United's alleged misrepresentation. It is unclear from the complaint exactly what information United allegedly withheld from Enigma: the fact that Enigma would have to collect payments from participants in order to receive full payment on its claims, or the fact that United would only accept certain types of documentation as proof of those payments.

  Either way, however, the alleged misrepresentation relates to the terms of the ERISA plan, since the plan governs both of these disputed issues. The Second Circuit has held that state common law claims of fraudulent misrepresentation are preempted by ERISA if the false representation concerns the existence, terms, or benefits of an ERISA plan. Cicio v. Does 1-8, 321 F.3d 83, 96 (2d Cir. 2003), vacated sub nom. Vytra Healthcare v. Cicio, 124 S. Ct. 2902 (2004), aff'd in part and rev'd in part on remand, Cicio v. Does 1-8, 385 F.3d 156 (2d Cir. 2004) (per curiam); see also Pancotti v. Boehringer Ingelheim Pharm., Inc., No. 3:06cv1674 (PCD), 2007 WL 2071624, at *7 (D. Conn. July 17, 2007). A fraudulent misrepresentation claim is not preempted if "neither the existence of an ERISA plan nor the interpretation of any such plan's terms is material" to the claim. DaPonte v. Manfredi Motors, Inc., 157 F. App'x 328, 331 (2d Cir. 2005); see also Geller v. Cnty. Line Auto Sales, Inc., 86 F.3d 18, 23 (2d Cir. 1996) (claim is not preempted where it "does not rely on the . . . plan's operation or management" and the plan "was only the context in which this garden variety fraud occurred"). Here, though, just as with the unjust enrichment claim, resolving the fraudulent misrepresentation claim will require the court to interpret the plan's terms. The court will need to examine what in fact the plan requires

in order to determine whether United misrepresented its requirements to Enigma. The alleged misrepresentations "are all closely related to the manner in which [the insurer] manages the plan and have substantial impact on Plaintiff's benefits under the plan." Gianetti v. Blue Cross and Blue Shield of Conn., Inc., No. 3:07cv01561 (PCD), 2008 WL 1994895, at *5-*6 (D. Conn. May 6, 2008) (holding that ERISA preempts claims that defendant fraudulently concealed and misrepresented payments and claim denials under the plan).

Furthermore, the damages that Enigma seeks from this cause of action are the benefits that United denied under the plan. Claims are preempted by ERISA if they seek "only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." Davila, 542 U.S. at 214 (finding state tort claim preempted by ERISA); see also Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc., No. 09-CV-2276 (CBA)(VP), 2012 WL 832252, at *14 (E.D.N.Y. Mar. 12, 2012) ("To the extent that plaintiffs seek 'unpaid benefits' as relief for the tortious interference claim, they are clearly preempted."); Pancotti, 2007 WL 2071624 at *7 ("ERISA preempts a state law cause of action when it is nothing more than an alternative theory of recovery for conduct actionable under ERISA and concerns the extent of benefits under an employee benefit plan.").

Therefore, I find that the claim against United for fraudulent misrepresentation also falls within the scope of ERISA's civil enforcement scheme and is preempted by ERISA.

### D. Enigma's Breach of Contract Claim Against Multiplan

In Enigma's cause of action against Multiplan for breach of contract, Enigma asserts that Multiplan breached their agreement by failing to take steps to resolve the dispute between Enigma and United. I agree with Enigma that this claim implicates a contractual duty contained in the agreement between Multiplan and Enigma that exists separately from any obligations

18

under the ERISA plan. Pl.'s Mem. of Law in Further Supp. of Mot. to Remand, Dkt. #30, at 8.

Enigma's claim against Multiplan does not meet the first prong of the <u>Davila</u> test because it is

"brought <u>solely</u> pursuant to an independent duty that has nothing to do with ERISA."

<u>Montefiore</u>, 642 F.3d at 328.

      I note that Multiplan has not filed any submissions regarding Enigma's motion to remand

or the application of the <u>Davila</u> test to this cause of action. United argues that Enigma's cause of

action against Multiplan is preempted under ERISA, because the contract that must be

interpreted is the ERISA plan. United points out that the agreement between Multiplan and

Enigma expressly refers to the ERISA plan to determine participants' coinsurance and deductible

payments. Def. United's Mem. of Law in Resp. to Pl.'s Mem. of Law, Dkt. #40, at 5. However,

the terms of the plan that govern the participants' payments are not relevant to this cause of

action. The obligation at issue here is Multiplan's promise to "make its best efforts" to resolve

disputes between Enigma and Multiplan clients. Compl. ¶ 19. To be sure, the underlying dispute

between Enigma and United concerns the terms of the ERISA plan, which is why the unjust

enrichment and fraudulent misrepresentation claims are preempted. But whether Multiplan had

an obligation to take steps to resolve this dispute, and if so whether Multiplan satisfied this

obligation, are separate issues that arise from the contract between Multiplan and Enigma and

will not require interpretation of the plan.

      Here, in contrast to the claims against United, Enigma does not stand in the shoes of plan

participants to assert a claim for benefits under the ERISA plan. Instead, Enigma asserts its own

claim based on its own contractual relationship with Multiplan. Therefore, this is not the type of

claim that could be brought under ERISA and is not preempted. <u>Cf.</u> <u>Marin Gen. Hosp. v.</u>

<u>Modesto & Empire Traction Co.</u>, 581 F.3d 941, 948 (9th Cir. 2009) (finding claim is not

preempted where hospital sues insurer based on breach of oral contract separate from ERISA

plan, because hospital is not suing as assignee of plan participant but "in its own right pursuant to

an independent obligation"); <u>Blue Cross of Calif. v. Anesthesia Care Assocs. Med. Grp., Inc.,</u>

187 F.3d 1045, 1050 (9th Cir. 1999) (finding no ERISA preemption where provider alleges that

insurer breached provider agreement by improperly amending fee schedules, since claims "arise

from the terms of their provider agreements and could not be asserted by their patients-

assignors").

Since I have determined that this court has subject matter jurisdiction over Enigma's

other causes of action, this court can exercise supplemental jurisdiction over the related state law

breach of contract claim against Multiplan. 28 U.S.C. § 1367(a); <u>see</u> <u>Montefiore</u>, 642 F.3d at

332-33 (where all claims involve insurer's alleged failure to pay provider for medical services,

state law claims are properly subject to district court's supplemental jurisdiction); <u>Josephson v.</u>

<u>United Healthcare Corp.</u>, No. 11-CV-3665(JS)(ETB), 2012 WL 4511365, at *4 (E.D.N.Y. Sept.

28, 2012); <u>Neuroaxis Neurosurgical Assocs.</u>, 2012 WL 4840807, at *5.


**CONCLUSION**

For the foregoing reasons, I find that Enigma's causes of action against United for unjust

enrichment and fraudulent misrepresentation fall within the scope of ERISA's civil enforcement

scheme. The court can exercise subject matter jurisdiction over those claims and supplemental

jurisdiction over the state law breach of contract claim against Multiplan. Accordingly, Enigma's

motion to remand is denied.

I now turn to both defendants' pending requests for pre-motion conferences to discuss

anticipated motions to dismiss. United seeks to dismiss Enigma's second and third causes of

action on the grounds that they are preempted by ERISA, that Enigma has failed to plead the elements of fraud, and that the damages lack specificity. Dkt. #5. Multiplan seeks to dismiss the first cause of action for failure to state a claim. Dkt. #13. Enigma opposes both requests and in the alternative asks for leave to amend the complaint. Dkt. #9, 19.

Having found that Enigma's second and third causes of action against United are preempted by ERISA, I decline to recharacterize these claims as ERISA claims and instead grant Enigma the opportunity to replead its claims in a manner consistent with this opinion. See North Shore v. Local 272, 2013 WL 174212, at *7; Biomed, 2011 WL 803097, at *5; Berry v. MVP Health Plan, Inc., No. 1:06-CV-120 (NAM/RFT), 2006 WL 4401478, at *8 (N.D.N.Y. Sept. 30, 2006). Enigma shall have twenty-one days to file an amended complaint.[7] United and Multiplan can then choose to renew their requests for pre-motion conferences if they still wish to bring motions to dismiss.

SO ORDERED.

__/s/_____

Allyne R. Ross
United States District Judge

Dated:       January 27, 2014
             Brooklyn, New York

---

[7] United also alleges that it was not properly served and seeks to dismiss the complaint due to lack of personal jurisdiction. Dkt. #10. In my prior order finding removal to be timely, I found it unnecessary to determine whether service was proper. Dkt. #20. Should Enigma decide to file an amended complaint, it should also serve the complaint on both defendants in a manner that obviates the need for further litigation on the issue of service.